## UNITED STATES OF AMERICA

*v.*

## LORRIN A. THURSTON *et al.*

### March 8, 1912.

1. *Evidence—Expert testimony—Appraisement of real estate on information:* In proceedings requiring proof of the value of real estate and improvements attached thereto, expert testimony based upon information alone, as to rentals, sales of neighborhood property, and areas, some of which is correct and some incorrect is inadmissible before a jury.

2. *Same—Same—Appraisement on experience and examination:* In such proceedings, when it appears that the testimony of an expert witness is based upon his own experience as a real estate broker and on his examination of the property, independently of his opinion based upon his estimate of the values of neighboring properties arrived at from information as to their rentals and sales, some of which is incorrect, it should be allowed to stand.

*Eminent Domain:* Motion to strike out certain testimony.

*R. W. Breckons,* U. S. District Attorney, for the motion.
*Holmes, Stanley & Olson,* contra.

DOLE, J. The case of *Delaware, L. & W. R. Co. v. Roalefs,* 70 Fed. 21, was one to recover compensation for injuries received in an accident. A doctor, who had been called in a year after the accident, testified as to the plaintiff's condition from information obtained from his declarations at the time respecting his symptoms past and present, and also based on his own personal observations. The court ruled that such of his information as rested on the declarations of the patient as to past conditions and symptoms could not be received and that the opinion of the doctor was indivisible and must be accepted or rejected as a whole, there being nothing to show how much of it rested on dec-

larations of the patient and how much on personal observation, and stated that the jury should not have been allowed to guess what it would have been in the absence of the declarations, and to try to estimate the damages upon such a guess.

[1] This ruling applies to, the present case insofar as the evidence of Mr. Reidford states that among his reasons for arriving at his appraisement of the Cummins block were statements, later shown to be inaccurate, of the net rentals of the McIntyre building and statements of the area of the Jordan block, also shown to be inaccurate, and a consideration of a sale of the Chambers drug store property, which took place after the date of the summons in this case.

[2] On the other hand, the claimants have submitted the case of *People v. Benham,* 160 N. Y. 402, 445, this, also, being a case of medical expert testimony, in which it appears that the medical witnesses based their conclusion on a number of grounds, some of which were found to be unproved or disproved. The court was requested to instruct the jury that the testimony of such physicians must be considered valueless and disregarded if one of the symptoms enumerated should be disproved. The court said, "We think there is no authority for this; the disproof of one symptom may, to some extent, weaken the conclusion of these witnesses, but may not totally destroy it, so that their testimony should be wholly disregarded by the jury."

Is there any difference in the nature of expert testimony in appraising the value of property based on that of neighboring property shown by sales and rentals, and the case of medical testimony as to the cause of death? There is this difference—that the investigation of values is on a sliding scale, the issue being whether it is worth so much or less or more; whereas the investigation of the cause of a death contains no such field, but is limited as to question of fact as to whether deceased died a natural death or whether he came to his death through some violent or poisonous agent.

The opinion in the New York case seems reasonable because the physician, leaving out some of the facts upon which he based his conclusion, still had other facts and the court in that case deemed it safe to leave it to the jury to consider those facts in weighing the testimony of the expert. In the case of valuation of property, the question to be answered being answerable by a hundred possible estimates, is not the case much more difficult for a jury to consider as to the amount of influence the incompetent evidence had on the mind of the expert witness in reaching his conclusion, and how much his opinion can be discounted by the fact that certain of such evidence was incompetent; or, can the jury size up the case and say that his testimony should be discounted so much or so much? In the New York case the jury could say, well, there is still testimony upon which the decision as to the presence of poison could be sustained; and, although to my mind the case was not free from doubt, yet I feel that the allowance of such an opinion was on a somewhat different basis than exists in the present case. It will be seen that this point is raised in view of the difficulty a jury would have in fixing the influence the incompetent and disproved testimony had had upon the mind of the expert witness in reaching his conclusion, where such a conclusion is based both upon correct and incorrect and competent and incompetent information. Where such expert testimony might be based upon information which has gone to the jury, it would be for the jury to weigh the evidence of such information and to deal accordingly with the expert opinion under the instructions of the court, which might be to disregard the opinion if they found the information on which the expert testified to be in whole or in part unfounded. The district attorney argued that if there was any inaccuracy, even to a cent, that the opinion should not be given to the jury. I think he is wrong there. The estimation of damages in cases like this is a reaching out for an approximate figure;

no figure can be obtained which may be considered as absolutely correct. Therefore, where the difference is slight and not sufficient to materially influence the mind of the expert I should ignore it. In this case, however, we find that the information relied on by Mr. Reidford in regard to the McIntyre building was inaccurate as to the net rentals of the block, to the extent of about a thousand dollars a year, and that his information in regard to the area of the Jordan block was inaccurate to the extent of over 201 square feet, and as to the rentals of the same in the neighborhood of five hundred dollars a year; that he took into consideration the sale of the Chambers drug store block which occurred subsequent to the date of the summons in this case. Such incompetent evidence, and evidence involving such considerable mistakes of fact, are too great to pass over. It also appears that a considerable portion of the information relied on by Mr. Reidford was hearsay testimony which may be found to be, and probably was, correct; but it has not been proven before this court to be so. I do not find in the testimony, any record showing that Mr. Reidford made any independent appraisement of the Cummins property based on his own experience as a real estate man, and on his examination of the building clear of and free from his examination of the valuations of neighboring property based on sales and rentals. If there is any such I think it may stand; otherwise the motion to strike is allowed.